ALFRED SCHEFFER and Another v. JAMES LOWE.

July 14, 1899.

Nos. 11,579—(173).

## Conversion—Verdict Sustained by Evidence.

Evidence considered, and *held* sufficient to sustain the verdict of the jury.

Action in the district court for Murray county for conversion. The case was tried before P. E. Brown, J., and a jury, which rendered a verdict in favor of defendant; and from an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*Morphy, Ewing & Gilbert,* for appellants.

*M. E. Foley,* for respondent.

BUCK, J.

The plaintiffs brought this action to recover from the defendant, Lowe, damages for alleged conversion to his own use on February

12, 1898, of certain goods and merchandise, of the alleged value of $450, which they claim to have bought of one Mary King. The goods were situated in the village of Fulda, Murray county, in this state, where King resided, and of which county Lowe, the defendant, was sheriff. In defense of the plaintiffs' claims, Lowe alleges that, in an action brought by one Dobereiner against Mary King, a writ of attachment was issued out of the district court of Murray county, and under said writ he levied upon the goods described in the complaint, as the property of Mary King, whose goods he claims they were, and that the alleged purchase of said goods by plaintiffs from Mary King was made for the purpose of hindering, delaying, and defrauding creditors, and that plaintiffs had knowledge of it, or participated in such transaction.

It appears that on February 10, 1898, Mary King was doing business as a dealer in harness and other goods in said village of Fulda, and on that day one of the plaintiffs came to Fulda, on a telegram from Mary King, and, in a short time after his arrival, King executed a bill of sale of these goods to plaintiffs, and that plaintiffs' claim against her did not exceed the sum of $300, while the value of the goods conveyed by her in payment of this claim exceeded $600; that some of the goods in her store were immediately packed February 11, 1898, and shipped to St. Paul, where plaintiffs resided; that King was at that time heavily indebted to other persons, and was insolvent; that one of plaintiffs' firm, who was in Fulda on the day of such sale (February 10, 1898), went away from Fulda the next day, and left one Peters (King's clerk) to manage the store and the said goods therein so conveyed, and who had previously, and up to the time of such sale, conducted said store and handled said goods for Mrs. King, and that said clerk handled said goods in the same store where Mrs. King had formerly kept them; and that no arrangement was made in reference to paying rent to Mrs. King, who owned and lived in said store.

Notwithstanding the stock of goods consisted of a large number of articles, and different kinds of goods, an examination thereof was made by Scheffer, one of the plaintiffs, in 15 minutes, or less, and the alleged purchase made without taking an inventory. The goods so packed and shipped by Scheffer to St. Paul were of the

value of $145, and were taken from the stock on hand in the store of Mary King, upon the alleged ground that they did not belong to her, but to plaintiffs, and were previously shipped to her by mistake, and upon an order which had been countermanded. On the night of February 11, 1898, Peters, as clerk of plaintiffs, sold and delivered to Elder & Devault five sets of double harness out of the said stock, for the sum of $100, which harnesses were hauled away from the store that night and stored in Elder's barn, and only $20 cash was then paid therefor, and a note for $80 for the balance of the purchase price of said harnesses was executed by Elder & Devault; but, instead of running to plaintiffs, it was made to M. King & Co., in full settlement for such purchase.

The cause was tried by a jury, and it returned a verdict in favor of the defendant. The issue squarely presented was whether each party (Mary King and plaintiffs, the vendor and vendees of the property) did not knowingly and intentionally enter into a fraudulent agreement and sale of the property for the purpose of defrauding, hindering, and delaying creditors, and the sale was a mere pretense. It is not a case where one of the parties is admitted or proven to be an innocent party to the transaction, but where it is alleged that both parties to the transaction conspired to defraud other creditors out of their just demands against Mary King, and that to this end the sale was made hastily, for an inadequate consideration, and to such an extent as to create in the mind a suspicion of fraud. The trial court denied plaintiffs' motion for a new trial, and they appeal.

Evidence as to the manner in which Peters (ostensibly left in charge by the plaintiffs) conducted the business, including his sale of the harnesses to Elder, was competent. Of course, the plaintiffs had the right to explain or rebut it. Perhaps it cannot be properly said that there is a great preponderance of evidence in favor of the verdict, but the questions involved were proper to be submitted to a jury, hence the verdict should not be disturbed.

Order affirmed.